## WESLEY v do CUOTO

Case No. 85-227 CA

Seventh Judicial Circuit, Flagler County

May 16, 1990

### APPEARANCES OF COUNSEL

**William J. Sheppard, Esquire,** for plaintiff.

**Richard W. Withers, Esquire,** for defendant.

### OPINION OF THE COURT

RICHARD O. WATSON, Circuit Judge.

*FINAL JUDGMENT FOR DEFENDANT*

This cause was heard on May 10th, 1990, upon Defendant's Motion for Summary Judgment.

The facts are undisputed and summary judgment is appropriate.

At approximately 1:00 o'clock a.m. on August 6th, 1981, Defendant shot Plaintiff's son outside Defendant's home. Plaintiff's son, John, later died as a result of the gunshot wound. Neither Plaintiff was

present at the scene where their son was shot. They did not hear nor see the shooting.

When the incident occurred the Plaintiffs were at their home sleeping. A police officer phoned and told John C. Wesley, Jr., his son had been shot in the head and they should go to the hospital. Mr. Wesley told Mrs. Wesley that John was hurt and was at the hospital.

When John C. Wesley, Jr. arrived at the Bunnell Hospital he saw his son being taken to a helicopter for transportation to St. Vincent's in Jacksonville. Apparently after Mr. Wesley left to get case for the car Mrs. Wesley arrived at the hospital. She also saw John being taken to the helicopter. At that time she didn't know he had been shot, but saw his head was bandaged.

Mr. and Mrs. Wesley did drive to St. Vincent's and saw their son in ICU where he remained until he died on August 9th, 1981.

Plaintiff, John C. Wesley, Jr., was hospitalized in *1984* following a fainting spell. His affidavit alleges periods of sleeplessness, nervousness, depression and gastrointestinal disorders following his son's death.

Plaintiff, Jacqueline D. Wesley, was also hospitalized in *1984.* Paragraph 5 of her affidavit is identical to paragraph 4 of Plaintiff, John C. Wesley's affidavit alleging sleeplessness, nervousness, depression and gastrointestinal disorders. Her condition in 1984 was diagnosed as nervous diverticulitis.

The affidavit of Roman Hendrickson, M.D. alleges:

"The physical manifestations experienced by both Mr. and Mrs. Wesley were consistent with the kind of emotional distress and nervous disorders which follow the death of a close family member, child or sibling."

The disposition of this case is controlled by *Champion v Gray,* 478 So.2d 17 (Fla. 1985). In *Champion* the complaint alleged that a drunk driver negligently struck and killed the Plaintiff's daughter with his car. The Plaintiff's wife heard the accident and immediately came to the scene of the accident. When Plaintiff's wife saw her daughter's body, her shock and grief was so great that she died on the spot. Walter Champion, as Presentative Representative of his wife's estate, filed a suit for negligent infliction of emotional distress.

The Court modified the existing impact rule and held:

" . . . the price of death or significant discernible physical injury, when caused by psychological trauma upon a close family member within the sensory perception of the physically injured person, is too

great a harm to require direct physical contract before a cause of action exists." The Court decided that three factors must be present before such an action may be brought without actual physical impact. They are:

(1)

A clearly, significant, discernible physical impairment must accompany or occur within a short time of the psychic injury (such as death, paralysis, muscular impairment or similar objectively discernible physical impairment).

(2)

Plaintiff must be directly involved in the event causing the original physical injury (such as seeing or hearing the event or arriving on the scene while the injured party is still present).

(3)

Plaintiff must have an especially close attachment to the directly injured person (a spouse or child).

Only the third requirement in this case has been met. Plaintiffs do not meet the first two requirements. Seeing their son at the hospital being placed in a helicopter does not meet the "direct involvement" requirement adopted by the Court. The Court referred in passing to such a circumstance and refused to decide whether seeing an injured child in the hospital would meet the test; however, it did say:

"We do not say whether or not we would recognize a claim under such circumstances, but if so, we would think that this scenario reaches the outer limits of the requirement involvement in the case."

Neither do the Plaintiffs meet the requirement of a clearly discernible physical impairment within a short time of the psychic injury. The physical impairment claimed by the parties are not sufficient to meet the test of significant physically discernible injuries contemplated by *Champion*. Neither party was hospitalized until 1984. The physical conditions they described in their Affidavits were described by Dr. Hendrickson as being consistent with the death of a close family member, child or sibling. In other words the type of impairment suffered by loved ones in general—not a result of direct involvement in the incident which caused the original injury.

There is no doubt Plaintiffs have suffered. The grief suffered by a parent who loses a child has to be unbearable. However, the Florida Supreme COurt held that such emotional and physical injuries are compensable only under very limited circumstances. If they wish to

152

expand those circumstances to the outer limits they may do so. The trial Court cannot.

It is therefore,

ORDERED

1. Defendant's Motion for Summary Judgment is granted.

2. That Plaintiffs, John C. Wesley, Jr., and Jacqueline D. Wesley, his wife, take nothing by this action and that Defendant, Antonio do Couto, go hence without day and recover his costs. Jurisdiction is reserved to award costs.

DONE AND ORDERED in Chambers at St. Augustine, St. Johns County, Florida, this 16th day of May, 1990.