DAIRY FARM LEASING
COMPANY, Appellant,

v.

HAAS LIVESTOCK SELLING
AGENCY, INC., Respondent.

No. C2–90–549.

Court of Appeals of Minnesota.

July 31, 1990.

Paul R. Haik, Robin & Thompson, P.A., Wayzata, for appellant.

Steven E. Rau, Laura J. Davis, Maun & Simon, St. Paul, for respondent.

## OPINION

PARKER, Judge.

Dairy Farm Leasing Company (DFLC) appeals from a judgment finding that Haas Livestock Selling Agency, Inc., was not liable for conversion of dairy cattle consigned to it to sell "for slaughter only" by a third party. We reverse and remand.

## FACTS

DFLC leased 20 dairy cows to Clark and Charlotte Johnson in 1985 for a term of five years, with DFLC retaining ownership of the cattle. The Johnsons provided DFLC with a mortgage and milk assignment. DFLC filed a UCC–1 financing statement with the Meeker County Recorder. The financing statement noted that the cattle were leased to Johnson, the lease was not a security interest, and that DFLC had a security interest in "accounts" arising from the sale of milk and in "farm products" consisting of offspring of the leased dairy cattle.

In April 1986, the Johnsons consigned 61 head of cattle, including 18 cattle leased from DFLC, to Haas. The consignment papers stated that the cattle were to be sold for "slaughter only" and listed DFLC as the owner of 18 of the consigned cattle. Haas sold the cattle for slaughter and remitted the sale price for 18 head of cattle, minus commission and costs, to DFLC.

DFLC filed an action against Haas for conversion, claiming it was liable for the market value of their cattle. The trial court found that the cattle were enrolled in the Dairy Termination Program, a federal program provided for in 7 U.S.C. § 1446, and could therefore be sold only for slaughter. It concluded that Haas was not liable for conversion.

## ISSUES

1. Did the trial court err in finding that DFLC's dairy cattle were enrolled in the Dairy Termination Program?

2. Did the trial court err in concluding that Haas was not liable for conversion of DFLC's cattle under state law.

3. Did the trial court err in failing to award DFLC damages under Minn.Stat. § 609.551 and punitive damages under Minn.Stat. § 549.20?

## DISCUSSION

On appeal from a judgment, this court's scope of review is whether the evidence is sufficient to support the trial court's findings and whether the findings support its conclusions of law. *Sauter v. Wasemiller*, 364 N.W.2d 833, 834 (Minn. App.1985) *aff'd*, 389 N.W.2d 200 (Minn. 1986). The trial court's findings of fact should not be set aside unless they are clearly erroneous, with due regard given to the trial court's opportunity to judge the credibility of witnesses. Minn.R.Civ.P. 52.-01. Findings of fact are clearly erroneous if they are "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Northern States Power Co. v. Lyon Food Products, Inc.*, 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975).

### I

The trial court found that DFLC's cattle were branded with an "X" and were therefore enrolled in the Dairy Termination Program, 7 U.S.C. § 1446(d)(3). This finding was based on expert testimony regard-

ing the termination program and Haas' owner's testimony as to the practice in his business during the Dairy Termination Program when cattle were consigned for "slaughter only," as were DFLC's cattle.

Haas' owner, who had not seen DFLC's cattle, testified that his employees saw an "X" brand on DFLC's cattle. Although this appears to be hearsay evidence, DFLC's appeal is from the judgment and not from an order regarding a motion for a new trial; this court cannot disregard hearsay evidence. *See Sauter,* 389 N.W.2d at 201. Nor can we find clear error in granting credibility to this evidence when it is supported by testimony concerning the practice of Haas employees in handling dairy cattle consigned for slaughter.

At the time Haas received consignment of DFLC's cattle, many other cattle were being consigned for slaughter as part of the Dairy Termination Program. Haas' owner testified that Haas only accepted dairy cattle consigned for "slaughter only" if those cattle were enrolled in the termination program. Cattle enrolled in the Dairy Termination Program were required to be branded. 7 C.F.R. §§ 1430.452 and 1430.458 (1987). Haas' expert witness, a government employee who was responsible for the administration of the Dairy Termination Program in Minnesota, testified that cattle enrolled in the program were branded with an "X."

Based on this evidence, the trial court gave credibility to the hearsay testimony that DFLC's cattle were branded with an "X" and to the inference that they were so branded drawn from the consignment slip, which said "for slaughter only." The trial court then concluded that DFLC's cattle were enrolled in the Dairy Termination Program. The trial court stated that this was based on Haas' expert's testimony that all cattle branded with an "X" were enrolled in the program. There is no direct evidence of enrollment in the record. While DFLC argues that cattle with an "X" brand may have been branded this way for some other reason, such as theft, no such evidence was presented. Although the finding of enrollment is based on infer-

ential rather than direct evidence, we cannot say this is clear error.

## II

■ Conversion is "an act of willful interference with the personal property of another which is without justification or which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property." *Dain Bosworth, Inc. v. Goetze,* 374 N.W.2d 467, 471 (Minn.App.1985) (citing *Larson v. Archer–Daniels–Midland Co., Inc.,* 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948)). Good faith is not a defense to a claim of conversion. *Id.* Generally, the measure of damages in a conversion case is the market value of the property at the time of the conversion, plus interest from that time. *McKinley v. Flaherty,* 390 N.W.2d 30, 33 (Minn.App.1986) (citing *McLeod–Nash Motors, Inc. v. Commercial Credit Trust,* 187 Minn. 452, 460, 246 N.W. 17, 20 (1932)).

Haas admitted that it knew DFLC was the owner of 18 of the dairy cattle which the Johnsons consigned to it. DFLC filed notice of its lease in the county where the Johnsons resided and from which the cattle were shipped. This filing gave Haas constructive notice of this agreement and that the Johnsons did not have the right to sell these cattle without DFLC's consent. *See Mason City Production Credit Association v. Sig Ellingson & Co.,* 205 Minn. 537, 540–41, 286 N.W. 713, 715, *cert. denied,* 308 U.S. 599, 60 S.Ct. 130, 84 L.Ed. 501 (1939) (holding that the filing of a chattel mortgage is notice to the livestock agent of its existence and terms). Unlike the market agent in *Sig Ellingson,* Haas remitted the net proceeds of the sale for slaughter to DFLC.

■ Haas contends that the obligations and liabilities imposed on it by the Dairy Termination Program, a federal law, impliedly preempt any application of the state law of conversion. *See Forster v. R.J. Reynolds Tobacco Co.,* 437 N.W.2d 655, 658 (Minn.1989). We note that the statute enabling the termination program does not expressly preempt state law of conversion. *See* 7 U.S.C. § 1446(d)(3). Haas argues

that it is impossible for it to hold the cattle for DFLC and also comply with the termination program, which Haas claims requires it to sell enrolled cattle for slaughter or export within a specific period of time.

The Dairy Termination Program imposes obligations and civil penalties on producers and purchasers of enrolled cattle. *See, e.g.,* 7 C.F.R. §§ 1430.460 and 1430.458. It does not appear to impose liability on Haas, who was a sales agent, not a "producer" or "purchaser." *See* Minn.Stat. § 17A.03, subd. 6 (1988) (a livestock market agent is a person who sells consigned livestock for the accounts of others). The rules provide that producers, the Johnsons in this case, remain responsible for seeing that cattle they sell for slaughter are actually slaughtered. 7 C.F.R. § 1430.458(c). The rules also provide that retention of enrolled cattle may be permitted if a person receives permission from the appropriate authorities. 7 C.F.R. § 1430.468(e). There is nothing which prevents Haas from calling DFLC to obtain its decision regarding slaughter or export of the cattle. Alternatively, Haas could have refused to accept consignment of the cattle without DFLC's permission. We hold there is no direct conflict between state and federal law which would show Congress' intent to preempt application of the state law of conversion.

■ The trial court seemed to conclude there was no conversion because Haas' sale of DFLC's cattle for slaughter was not inconsistent with DFLC's ownership rights which had been altered when the cattle were enrolled in the Dairy Termination Program.[1] However, the trial court has seemingly overlooked the fact that enrolled cattle can also be sold for export. 7 C.F.R.

§ 1430.457(a). To the extent that DFLC has been deprived of its right to sell the cattle for export, Haas' sale of these cattle for slaughter interfered with DFLC's ownership rights and therefore constitutes a conversion. DFLC is entitled to recover the difference between the cattle's export value and the slaughter value received if the export value is greater.

### III

■ DFLC claims it is entitled to treble damages for Haas' conversion of its cattle. Minn.Stat. § 609.551, subd. 4, provides that a person who has been injured "by a violation of this section" may bring an action for treble damages, costs and attorney fees. Section 609.551 is a criminal statute for theft of livestock. There has been no such criminal conviction in this case, and DFLC cites no authority for finding a violation of this statute in a civil proceeding; we cannot extend these damages to this civil case.

The trial court did not address the issue of punitive damages pursuant to Minn.Stat. § 549.20 because it found there was no liability for conversion; it should be determined on remand.

### DECISION

The trial court's finding that the cattle were enrolled in the Dairy Termination Program is not clearly erroneous. The trial court erred in its legal conclusion that Haas was not liable for conversion of DFLC's dairy cattle.

Reversed and remanded for determination of damages.

---

1. At trial DFLC attempted to prove that the Johnsons could not enroll DFLC cattle without DFLC's permission, but the regulations governing the Dairy Termination Program allow a lessee of dairy cattle to enter leased cattle in the program without the lessor's permission if the lessor is not a "producer" as defined by the regulations. 7 C.F.R. § 1430.453. Haas' expert testified that DFLC was not a "producer" as defined in 7 C.F.R. § 1430.452(gg). DFLC does not argue this issue on appeal. Section 1430.-452(gg) of the regulations governing the termi-

nation program provides that an entity which has an ownership interest in a dairy cow is a producer if it "shares in the risk and/or proceeds of the production of the milk" from that cow. While DFLC had an assignment for proceeds from milk, the assignment was for a fixed sum. The expert testified that "share" means "percentage." Assuming this interpretation to be correct, DFLC was not a producer because it was not "sharing" in proceeds when it took a fixed amount of the milk production proceeds rather than a percentage.