DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**UN2JC AIR 1, LLC,**
Appellant,

v.

**R.D. DON WHITTINGTON, JAMES DESALVO, WORLD JET, INC.,
WORLD JET II, INC.,** and **WORLD JET OF DELAWARE, INC.,** a foreign
corporation,
Appellees.

No. 4D20-1449

[June 30, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carol-Lisa Phillips, Judge; L.T. Case No. CACE 09-24341 (25).

Marc Anthony Douthit of Douthit Law, LLC, Miami Lakes, for appellant.

Bruce David Green of Bruce David Green, P.A., Fort Lauderdale, for appellee World Jet, Inc.

WARNER, J.

In appellant UN2JC's action for conversion, the trial court granted summary judgment to appellee, World Jet, Inc., on the basis that the tort action was not independent of a breach of contract claim. Because appellee was not a party to the underlying contract and the conversion action against it was independent of the breach of contract, we reverse.

Appellant UN2JC is a Nevada limited liability company which sought to obtain a jet for air ambulance use. An airplane broker connected appellant with Don Whittington who owned several corporations in the aviation industry, including World Jet of Delaware, Inc. ("WJD") and appellee, World Jet, Inc.

In February 2005, appellant entered into a lease purchase agreement ("LPA") for a Learjet. The agreement showed WJD as the "Lessor/Owner" and appellant as the "Lessee/Purchaser." Its provisions included monthly payments, required insurance, and a representation that at the time of

delivery, the aircraft would have an operational certificate from the FAA. The agreement also provided that WJD would continue to retain ownership of the jet until all payments under the LPA were made.

In addition, a Final Aircraft Delivery Receipt and Repair Addendum was agreed to by the parties, and additionally, appellee. This agreement itemized needed repairs to be made at WJD's expense. It authorized appellant to obtain repairs identified in the agreement and to deduct the repairs from the monthly payments due to WJD. Appellant received the aircraft on May 12, 2005.

Appellant had multiple repairs made to the aircraft which totaled over $100,000. When the time came to make the June payment, appellant notified WJD that no payment would be forthcoming because of the credit due appellant for the balance of the repairs. WJD contested the commercial reasonableness of the repairs and their cost.

On June 16, 2005, WJD retook possession of the aircraft by flying it out of a repair facility without notice to appellant, resulting in the next fifteen years of litigation. First, WJD sued appellant for declaratory judgment, alleging a breach of the LPA by appellant for failing to provide necessary insurance and a breach of the Repair Addendum by failing to pay for repairs and obtaining commercially unreasonable cost estimates. As well, it contended that appellant permitted the aircraft to be piloted by an unapproved pilot. WJD sought a declaration that it had the right to terminate the contract.

Appellant answered, raising multiple affirmative defenses, and filing a counterclaim against WJD and a third-party claim against Whittington and another director of WJD. The counterclaim/third-party claim alleged that Whittington and his entities concealed major defects in the jet which had to be repaired at substantial expense, and appellant was deducting the cost of those repairs from the monthly payment due. One evening, the aircraft was stolen from the repair center when, unbeknownst to appellant, someone from the Whittington entities came to the hangar and flew off with the jet. When confronted, Whittington told appellant that the jet would be returned if appellant waived reimbursement for all but $15,000 of the repair costs.

Several years later, appellant filed an action against Whittington and several of his entities, including appellee. As to appellee, appellant claimed that appellee breached the repair addendum as well as the LPA. It sued for breach of contract and fraud. Later, appellant filed a third amended complaint against all of the Whittington defendants, including appellee.

2

As to appellee, the complaint added a cause of action for conversion, alleging that appellee was the record title owner of the jet. However, both WJD and appellee were also referred to as sellers under the Repair Addendum. Appellant alleged that it had fully complied with all the terms of the two agreements and that it was the lawful possessor of the jet when it was taken by appellee and the other Whittington defendants who "without any *bona fide* justification or excuse of any kind whatsoever, stole the Aircraft from [appellant]." The third amended complaint continued to allege a breach of contract against appellee, alleging a breach of both agreements.

The court consolidated the earlier declaratory judgment action and counterclaim against WJD with the third-party complaint against appellee. On a motion for partial summary judgment, the court entered judgment on the breach of contract count against appellee, concluding that appellee was not a party to the LPA, and therefore not a party to the agreement.

Appellee then moved for summary judgment, and amended summary judgment, on the conversion count, arguing that the independent tort doctrine barred the conversion claim, because the same set of facts were alleged in appellant's counterclaim against WJD for breach of contract. According to appellee, because the damages claimed in that count were the same as in the conversion count against appellee, the conversion count should be barred. Appellant responded that the court had found that appellee was not a party to the breach of contract, and without privity of contract the independent tort doctrine did not apply. Furthermore, conversion was an independent tort and thus the breach of contract action did not bar appellant from asserting the cause of action.

After a hearing, the court entered an order granting the amended motion for partial summary judgment on the conversion count and later entered final summary judgment, as all claims against appellee were disposed of by the summary judgment orders. Appellant then filed this appeal.

The standard of review of an order granting summary judgment is de novo. *Restoration Constr., LLC v. SafePoint Ins. Co.*, 308 So. 3d 649, 651 (Fla. 4th DCA 2020). Issues of law are subject to de novo review by the appellate court. *Howard v. Savitsky*, 813 So. 2d 978, 979 (Fla. 2d DCA 2002). The issue in this appeal turns on a question of law, and thus our review is de novo.

As a general principle of law, "a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract."

3

*Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020) (citing *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017)).  This principle is "rooted in the notion that, when a contract is breached, the parameters of a plaintiff's claim are defined by contract law, rather than by tort law."  223 So. 3d at 1068.  This principle only applies, however, to the parties to the contract.  *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004); *Straub Cap. Corp. v. L. Frank Chopin, P.A.*, 724 So. 2d 577 (Fla. 4th DCA 1998).

In this case, the court had previously determined in granting partial summary judgment that appellee was not a party to the LPA.  Therefore, not being a party to the contract, the independent tort doctrine does not apply.  While appellee argues that the count for conversion was similar to the breach of contract count in the suit against WJD, a reading of the allegations of the conversion count belies that argument.  "Conversion is defined as 'an act of dominion wrongfully asserted over, and inconsistent with, another's possessory rights in personal property.'"  *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. 4th DCA 2006) (quoting *Goodwin v. Alexatos*, 584 So. 2d 1007, 1011 (Fla. 5th DCA 1991).  The allegations of the complaint regarding the contract were meant to establish that appellant had not breached the contract and thus had a superior possessory interest to appellee and the other Whittington defendants, the essence of the conversion claim.

Furthermore, even if there were privity of contract, the allegations of the complaint were sufficient to show a tort independent of the contract.  Appellant alleged that it had a superior interest, and appellees simply stole the jet, even though appellant was not in breach of any obligation.

In this regard, this case is similar to *Edwards v. Landsman*, 51 So. 3d 1208 (Fla. 4th DCA 2011), where an automobile dealer brought claims for replevin and breach of contract against a purchaser of a used vehicle based upon a conditional sales contract, which required the purchaser to return the vehicle if not approved for financing.  The court issued a prejudgment writ of replevin, and the dealer recovered the vehicle.  The purchaser then answered and filed a counterclaim for conversion, alleging that she had completed the purchase and had a right superior to the dealer in the vehicle.  Further, the dealer had wrongfully obtained possession of the vehicle through its replevin action and through threats to the purchaser that she would be arrested for theft.  The dealer moved to dismiss the complaint, and the trial court dismissed the conversion count.

On appeal, we concluded that the purchaser could bring a conversion action to contest a wrongful replevin.  We said:

4

Florida law permits a counterclaim for conversion where the defendant in a replevin action alleges that the replevin was wrongful even after the trial court grants a prejudgment writ of replevin. *See Int'l Fid. Ins. Co. v. Prestige Rent–A–Car, Inc.*, 715 So. 2d 1025, 1029 (Fla. 5th DCA 1998) ("Causes of action for prejudgment writ of replevin and wrongful replevin are separate and distinct. Even when a party has employed the proper procedure in obtaining a prejudgment writ of replevin, there can still be a subsequent finding that the replevin was wrongful."). Although Florida's replevin statutes provide a remedy for a defendant who ultimately prevails on a final judgment after a prejudgment replevin writ had deprived the defendant of possession throughout the proceedings, the statutes also provide that they "shall not preclude any other remedies available under the laws of this state." §§ 78.20–.21, Fla. Stat. (2010). Florida case law suggests—and we agree— that such remedies include a conversion counterclaim to the replevin action. *See Rem–Con Commc'ns, Inc. v. United Am. Bank of Memphis*, 668 So. 2d 320, 321–22 (Fla. 2d DCA 1996) (reversing a summary judgment against a defendant on a counterclaim for wrongful repossession/conversion to a replevin claim); *Lease Fin. Corp. v. Nat'l Commuter Airlines, Inc.*, 462 So. 2d 564, 567 (Fla. 3d DCA 1985) ("Thus, [the defendant] can also take advantage of any remedies available under . . . general tort law as it exists in this state.").

*Id.* at 1213–14. As there were sufficient facts to support the purchaser's claim of ownership of the vehicle superior to the dealer and wrongful replevin of the vehicle by the dealer, we reversed dismissal of the conversion action.

Similarly, in this case the act of conversion of the aircraft was independent of the breach of contract, just as the replevin of the vehicle in *Edwards* was independent of the conditional sale contract and an alternative remedy for the dealer's act of possessing the vehicle. The facts alleged by appellant are sufficient to show its right of possession, in that it was not in default of its obligations. It also alleged that the appellee and the other defendants simply "stole" the jet without any pretense of authority. This was "[a]n act of willful interference with the personal property of another which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property[.]" *Seibel v. Soc'y Lease, Inc.*, 969 F. Supp. 713, 718 (M.D. Fla. 1997) (quoting *Dairy*

*Farm Leasing Co. v. Haas Livestock Selling Agency, Inc.*, 458 N.W. 2d 417, 419 (Minn. App. 1990)).

Appellee relies on *Mayo v. Allen*, 973 So. 2d 1257 (Fla. 1st DCA 2008) as supporting the trial court's decision in this case. In *Mayo*, the seller of an RV repossessed the vehicle after the purchaser defaulted. When the purchasers sued the seller for conversion for the value of personal belongings in the vehicle plus the value of repairs and the original down payment they had made, the trial court granted judgment in favor of the seller, because he had a right to repossess the vehicle upon default by the purchasers, which was affirmed on appeal. Appellee argues that *Mayo* supports summary judgment in this case, because appellant breached various terms of the LPA. However, no affidavits or record evidence supports a finding that appellant defaulted on the LPA. Furthermore, *Mayo* appears to have been determined upon a full trial and not summary judgment. *Mayo* simply provides no support for the summary judgment in this case.

We also reject the alternative arguments made by appellee. It claims that we should affirm for lack of a transcript of the summary judgment hearing. A transcript of a summary judgment hearing is not necessary to review a summary judgment, as the record consists of the motions and supporting and opposing papers. *See Pash, Tr. of Herbert and Minnie Pasch Fam. Tr., dated May 12, 1996 v. Mahogany Way Homeowners Ass'n, Inc.*, 310 So. 3d 430, 434 n.1 (Fla. 4th DCA 2021); *Shahar v. Green Tree Servicing LLC*, 125 So. 3d 251, 254 (Fla. 4th DCA 2013).

Alternatively, appellee argues that we should affirm because appellant improperly commingled claims in the conversion count against appellee and other Whittington defendants. Not only was this never raised in appellee's amended motion for summary judgment, but in our review of the complaint we do not find that it suffers from defects which would allow us to affirm on a tipsy coachman principle. Moreover, the trial court determined that the conversion count only applied to appellee. As a result, any reference to "Whittington defendants" in that count is a reference only to appellee. We also find no merit in appellee's estoppel argument.

For these reasons, we reverse the summary judgment and remand for further proceedings.

LEVINE, C.J., and CIKLIN, J., concur.

\*　　　\*　　　\*

6

*Not final until disposition of timely filed motion for rehearing.*